UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                     :

HELEN SARAHI FUNES GAMEZ,          :

                 Petitioner,      :         25 Civ. 7429 (PAE)

                                  :

       -v-                      :         <u>ORDER</u>

                                  :

LADEON FRANCIS ET AL.,            :

                                  :

                   Respondents.     X

-------------------------------------------------------------------

PAUL A. ENGELMAYER, District Judge:

    Attached to this Order are the following Court Exhibits:

- Exhibit A: Petitioner's Closing Argument Slides

- Exhibit B: Respondents' Closing Argument Slides.

                     SO ORDERED.

                    *Paul A. Engelmayer*

                  _____

                    PAUL A. ENGELMAYER
                    United States District Judge

Dated: October 27, 2025
       New York, New York

Exhibit A

# PETITIONER'S CLOSING ARGUMENT

## *Funes Gamez v. Francis et al.*

## 25 Civ. 7429

# Redetention under 8 C.F.R. § 241.4(l)(2) requires Notice and an Interview

"[R]edetention under section 241.4 requires notice and an informal interview, even when a noncitizen is detained because it is 'appropriate to enforce a removal order' under paragraph (l)(2)(iii)."

"[P]aragraph (l)(2) [like paragraph (l)(1)] covers circumstances where a violation of a condition of supervised release is the basis for revoking a noncitizen's release. *See* 8 C.F.R. § 241.4(l)(2)(ii). This overlap belies the Government's argument that these are two separate processes, and suggests that paragraph (l) sets forth a unified set of procedures for the revocation of removal."

*Zhu v. Genalo*, --- F. Supp. 3d ----, 2025 WL 2452352, at *6-*7 (S.D.N.Y. Aug. 26, 2025)

"District courts have consistently rejected this argument and held that § 241.4(l)(1)'s procedural requirements apply equally to revocation of a noncitizen's release pursuant to § 241.4(l)(2)."

*Constantinovici v. Bondi*, --- F. Supp. 3d. ----, 2025 WL 2898985, at *4 (S.D. Cal. Oct. 10, 2025)
(citing  *Diaz v. Wofford*, 2025 WL 2581575, at *5 (E.D. Cal. Sept. 5, 2025); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025);
*Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); *M.Q. v. United States*, 776 F. Supp. 3d 180, 187, 190, 190 n.1 (S.D.N.Y. 2025));
*accord Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *6 (S.D. Fla. Sept. 9, 2025);
*K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *5 (W.D. Ky. Sept. 4, 2025)
(citing *Zhen v. Doe*, 2025 WL 2258586 at *10 n.19 (N.D. Ohio Aug. 7, 2025))

2

# Redetention under 8 C.F.R. § 241.4(l)(2) requires Notice and an Interview

"Even more tellingly, § 241.4(l)(3)—titled Timing of review when release is revoked—clearly applies to all aliens whose release is revoked regardless of reason, and provides that '[i]f the alien is not released from custody following the informal interview provided for in paragraph (l)(1) of this section, ICE shall schedule the review process in the case of an alien whose previous release' has been revoked. This provision implies 'that "the informal interview provided for in paragraph (l)(1) of this section" applies to all [detained on revocation of an OSUP] regardless of whether or not release is revoked for a violation.'"

*Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *7 (S.D. Fla. Sept. 9, 2025)
(citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164 (W.D.N.Y. 2025)) (cleaned up)

"ICE's own statements in the Notice of Revocation also conflict with Respondents' argument as the Notice incorporates § 241.4(l)'s procedural requirements and states that Petitioner would 'promptly be afforded an informal interview.'"

*Constantinovici v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025)

3

# Oral Statements At Check-in Provide Insufficient Notice

"The [noncitizen] will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation **stated in the notification**."

8 C.F.R. § 241.4(l)(1) (emphasis added)

"Petitioner came into the ICE facility for a routine check-in pursuant to his OSUP, as he had been doing for the previous twelve years. Officer Utrera then met with Petitioner and informed him that ICE was revoking his OSUP. At this point, there was no indication available to either Petitioner or any reasonable observer that the meeting was actually an opportunity to contest his pending detention. It was only after this interaction—which Respondents characterize as the informal interview—that Petitioner was provided with the Notice, which stated that Petitioner 'will promptly be afforded an informal interview at which [he] will be given an opportunity to respond to the revocation.' ... **Petitioner would have had no inkling that his conversation with Officer Utrera would be his sole shot to contest the deprivation of his liberty until the formal review process promised approximately three months later.**"

*Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *8-*9 (S.D. Fla. Sept. 9, 2025)

"The record does not show that Field Office Director Cronen ever made the threshold determination that Rombot's "revocation [was] in the public interest and circumstances [did] not reasonably permit referral of the case to the [equivalent of the Executive Associate Commissioner]."

*Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) (quoting 8 C.F.R. § 241.4(l)(2))

4

# The Written Notice Was Flawed



Funes-Gamez, Helen
c/o Immigration and Customs Enforcement
New York Field Office

A098 119 249

### Notice of Revocation of Release

This letter is to inform you that your order of supervision has been revoked and you will be detained in the custody of U.S. Immigration and Customs Enforcement (ICE) at this time. This decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case, specifically that ICE has procured a travel document on your behalf and your removal is now imminent.

ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On November 4, 2024, you were ordered removed to Honduras by an authorized U.S. DHS official and you are subject to an administratively final order of removal.

Based on the above, and pursuant to 8 C.F.R. 241.4 / 8 C.F.R. 241.13, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation. If you are not released after the informal interview, you will receive notification of a new review, which will occur within approximately three months of the date of this notice.

You are advised that you must demonstrate that you are making reasonable efforts to comply with the order of removal, and that you are cooperating with ICE's efforts to remove you by taking whatever actions ICE requests to affect your removal. You are also advised that any willful failure or refusal on your part to make timely application in good faith for travel or other documents necessary for your departure, or any conspiracy or actions to prevent your removal or obstruct the issuance of a travel document, may subject you to criminal prosecution under 8 U.S.C. Section 1253(a).

HAKEEM O
FOLAJAIYE

Digitally signed by HAKEEM O FOLAJAIYE
DN: pn=HAKEEM O FOLAJAIYE, o=U.S.
Government, ou=People,
email=Hakeem.O.Folajaiye@ice.dhs.gov,
c=US
Date: 2025.09.08T19:50:13-0400

_____          ___09/08/2025___
Acting Field Office Director Folajaiye, Hakeem O              Date
Signature and Title of Deciding Official

**5**

---

Notice of Revocation of Release
Funes-Gamez, Helen 098 119 249
Page 2

### PROOF OF SERVICE

(1)   **Personal Service**

(a) I ____Haynes, K 11317_____ , Deportation Officer,
               Name of ICE Officer                                              Title

certify that I served __Funes-Gamez, Helen 098 119 249__ with a copy of this document at
                                      Name of detainee

_26 Federal Plaza, New York, NY 10278_ on ___09/08/2025___ at ___1600___.
               Institution                                      Date                            Time

## No Interview Was Provided After Written Notice Was Served

"According to the declaration submitted by ICE Officer Damian Giraldo, Giraldo 'conducted an informal interview with Ceesay at approximately 2:15 p.m. at 26 Federal Plaza' on the ninth floor, 'advised Ceesay of the reason his release was revoked, and inquired if there was any reason his release should not be revoked.' Ceesay's account of what occurred then suggests that he certainly did not understand the encounter as an informal interview at which he could contest the reasons that his release was being revoked. In any event, even if this was an informal interview, it occurred about five hours before Robinson signed the order revoking Ceesay's release. See Docket Item 9-2 at 11 (showing that order was signed at 7:54 p.m.). So **Ceesay could not have been afforded the opportunity to respond to the reasons his release was revoked before it was revoked**."

*Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 n.23 (W.D.N.Y. 2025) (cleaned up)

6

# The Memorialized "Interview" Does Not Meet The Regulations

ALIEN INFORMAL INTERVIEW

UPON REVOCATION OF ORDER OF SUPERVISION UNDER

8 C.F.R. § 241.4(l); 8 C.F.R. § 241.13(i)

STATEMENT OF __Funes-Gamez, Helen__

A File __098 119 249__

Detention Location ___NYC HOLD___

INTERVIEWING ICE OFFICER: ___Haynes, K 11317 Deportation Officer, NYC ERO___
[Print Name, Title & Duty Station]

On __09/08/2025__, I conducted an initial informal interview of the detainee listed above in order to afford the alien an opportunity to respond to the reasons for revocation of his or her order of supervision stated in the notification letter.  At the interview, the alien made the following oral response regarding the reasons for revocation: **I would like to leave my kids with my husband and have a reasonable fear interview.  I understand I will be detained and receive the interview, and my husband will pick my US citizen child up.**

The detainee did not provide a written statement or oral statement.  The detainee did not provide any documents.  Any documents provided are attached.

_____
Signature of Interviewing Officer

7

# 8 C.F.R. § 241.4 Protects a Liberty Interest

"8 C.F.R. § 241.4 [was] intended to 'provide due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release ...' ... Even if ICE has discretion to revoke a noncitizen's release under § 241.4(l)(2), the noncitizen's liberty interests are still implicated by his or her re-detention."

*Constantinovici v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025)
(quoting *Santamaria Orellana v. Baker*, Civil Action No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025),
citing *Mathews v. Diaz*, 426 U.S. 67, 77 (1976))

"[E]ven if the government has the discretion to revoke Villanueva's supervision, his constitutionally protected liberty interests are implicated by his re-detention. ... [I]ndividuals conditionally released from detention have a protected interest in their 'continued liberty.' This is true even when the released individual is subject to extensive conditions of release."

*Villanueva v. Tate*, --- F. Supp. 3d ----, 2025 WL 2774610, at *11 (S.D. Tex. Sept. 26, 2025)
(quoting *Young v. Harper*, 520 U.S. 143, 147 (1997),
citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))

8

# 8 C.F.R. § 241.4 Protects a Liberty Interest

"To be sure, not every procedural misstep raises a constitutional issue. … However, where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid ….'"

*Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017)
(quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993))

# Due Process Accompanies Even "Discretionary" Detention Determinations

"Because '[t]he Fifth Amendment entitles all 'persons' to due process of law ... the Due Process Clause covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.'"

*Zhu v. Genalo*, --- F. Supp. 3d ----, 2025 WL 2452352, at *4 (S.D.N.Y. Aug. 26, 2025)
(quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020))

"The Government has significant discretion to enforce the immigration laws and to revoke an Order of Supervision. However, the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."

*Constantinovici v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2898985, at *5 (S.D. Cal. Oct. 10, 2025)
(quoting *Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *7 (E.D. Cal. Sept. 5, 2025);
*Zhu v. Genalo*, --- F. Supp. 3d ----, 2025 WL 2452352, at *6-*7 (S.D.N.Y. Aug. 26, 2025);
*Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017)) (cleaned up))

"The government's argument ... confuses Ceesay's right to an order of supervision, which ICE indeed has discretion to grant or deny, with his right not to be detained without adequate—in fact, without any—process. **The right to be free from detention can never be dismissed as discretionary**."

*Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 166 (W.D.N.Y. 2025) (emphasis added)
(citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001))

# The Second Circuit Has So Held In an Analogous Context

"Under § 1226(a), Congress has delegated to the Attorney General the discretion to detain noncitizens during the pendency of their removal proceedings. … Claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241. The necessary scope of [habeas] review and resulting relief in part depends upon the procedural rigor of any earlier proceedings. **The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review**"

*Velasco Lopez v. Decker*, 978 F.3d 842, 849–50 (2d Cir. 2020)
(quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) and *Boumediene v. Bush*, 553 U.S. 723, 771 (2008)) (cleaned up)

11

# Release, Not Cure, Is The Appropriate Remedy

"If the eventual promise of a formal review were enough to cure a due process violation, ICE would be able to hold individuals for approximately three months after revocation with no meaningful opportunity to be heard."

> *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) (ordering immediate release); *accord* Dkt. 40 (*Rivera v. Arnott*, 4:25-cv-570, at 5 n.6 (W.D. Mo. Oct. 7, 2025)) (ordering release for lack of § 241.4(l)(1) interview, even though 90-day custody review under § 241.4(l)(3) had already been provided)

"Although there is no clear definition of 'upon revocation,' courts have admonished Respondents in other cases for waiting twenty-seven days to provide notice and an interview."

> *K.E.O. v. Woosley*, No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *6 (W.D. Ky. Sept. 4, 2025) (citing *M.S.L. v. Bostock*, No. 6:25-CV-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025)) (ordering immediate release)

"At the hearing, Respondents stated that ICE planned to provide Petitioner with an interview within two days of the hearing—nearly 6 weeks after his arrest. This cannot reasonably be construed as a 'prompt' informal interview.

> *Constantinovici v. Bondi*, --- F. Supp. 3d ----, 2025 WL 2898985, at *6 (S.D. Cal. Oct. 10, 2025) (ordering immediate release)

# Release Is Appropriate Whether the Violation is Constitutional or Procedural

"ICE did not provide Petitioner with a Notice of Revocation until she had been in custody for two days, despite the regulation requiring notice 'upon revocation.' The July 12 Notice was, by the Government's own admission, defective... . ... Nor was the July 12 Notice accompanied by an informal interview, as required by § 241.4(l)(1). ...On this record, the Court concludes that the revocation of Petitioner's supervised release was arbitrary and capricious and that her detention is unlawful.

**This provides an additional basis [under the Administrative Procedures Act] for the granting of the Amended Petition for Writ of Habeas Corpus.**"

*M.S.L. v. Bostock,* No. 6:25-CV-01204-AA,  2025 WL 2430267, at *15 (D. Or. Aug. 21, 2025) (emphasis added) (ordering immediate release)

13

# Talk of Third-Country Removal is Premature

"Petitioner Jose Cruz-Medina is originally from Honduras and illegally reentered the United States in 2013 after having been previously removed in 2012. An immigration judge ("IJ") granted him withholding of removal in 2019 based on a finding that he was likely to be persecuted or tortured in Honduras. The government now proposes to remove him to Mexico. ... Petitioner has sought relief under the withholding of removal statute or the Convention Against Torture with respect to Mexico.
...
Petitioner has shown a strong likelihood of success on the merits of his claim that until and unless an immigration judge concurs with the asylum officer's determination that Petitioner lacks a reasonable fear of persecution or torture in Mexico, **due process precludes his removal to Mexico**."

*Cruz-Medina v. Noem*, , --- F. Supp. 3d ----, 2025 WL 2841488, at *9 (D. Md. Oct. 7, 2025)
(preliminarily enjoining petitioner's removal to Mexico until and unless immigration judge approves)

14

Exhibit B

# *Helen Sarahi Funes Gamez v. LaDeon Francis, et al.,*

## Closing Argument

# THE PURPOSE OF HABEAS IS TO DETERMINE THE LAWFULNESS OF DETENTION

- The relevant question in a habeas petition is whether the Petitioner is lawfully detained – not if there was a procedural error in detaining her.

  - *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923) "A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, <u>he is not to be discharged for defects in the original arrest or commitment</u>." (emphasis added).

  - *See, e.g.*, *U.S. ex rel. Ling Yee Suey v. Spar*, 149 F.2d 881, 883 (2d Cir. 1945) ("But on a writ of habeas corpus we can determine only whether petitioners can be lawfully detained; and if sufficient ground for their detention is shown, they are 'not to be discharged for defects in the original arrest or commitment.'" (citing *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923)).

# PETITIONER HAS BEEN LAWFULLY DETAINED

U.S. Department of Homeland Security    **Notice of Intent/Decision to Reinstate Prior Order**

File No. A098 119 249
Event No: EGT2305001802
Date: May 23, 2023

Name: HELEN SARAHI FUNES-GAMEZ

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of ___REMOVAL___ entered against you. This intent is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on ___November 04, 2004___ at ___HARLINGEN, TEXAS___ (Location)

2. You have been identified as an alien who:
   [x] was removed on ___August 07, 2009___ pursuant to an order of deportation / exclusion / removal.
   [ ] departed voluntarily on ___ pursuant to an order of exclusion, deportation or removal on or after the date on which such order took effect (i.e., who self-deported).

3. You illegally reentered the United States on or about ___May 21, 2023___ at or near ___EAGLE PASS, TEXAS___

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You **do not** have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the* ___SPANISH___ *language.*

CARLOS LOPEZ
(Printed or typed name of official)    (Signature of officer)
Border Patrol Agent
(Title of officer)

**Acknowledgment and Response**

I [ ] do [x] do not wish to make a statement contesting this determination.
05/23/2023
(Date)    **Refused to Sign** (Signature of Alien)

**Decision, Order, and Officer's Certification**

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

05/23/2023    LAREDO, TEXAS
(Date)    (Location)    (Signature of authorized deciding official)
AGUSTIN LOPEZ
(Printed or typed name of official)    Acting/Patrol Agent in Charge
(Title)

Form I-871 (Rev. 08/01/07)

Gov. Exhibit G

---

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on ___November 04, 2004___ at ___HARLINGEN, TEXAS___ (Date) (Location)

2. You have been identified as an alien who:
   [x] was removed on ___August 07, 2009___ pursuant to an order of deportation / exclusion / removal. (Date)

3. You illegally reentered the United States on or about ___May 21, 2023___ at or near ___EAGLE PASS, TEXAS___ (Date) (Location)

**Decision, Order, and Officer's Certification**

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, ==I have determined that the above-named alien is subject to removal through reinstatement of the prior order==, in accordance with section 241(a)(5) of the Act.

05/23/2023    LAREDO, TEXAS
(Date)    (Location)    (Signature of authorized deciding official)
AGUSTIN LOPEZ
(Printed or typed name of official)    Acting/Patrol Agent in Charge
(Title)

# PETITIONER HAS BEEN LAWFULLY DETAINED

- ICE Has Statutory Authority To Detain Aliens, Like Petitioner, Subject To Final Orders of Removal

  - Pursuant to 8 U.S.C. § 1231, ICE has authority to detain an alien subject to a final removal order. 8 U.S.C. § 1231(a).

  - *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) ("8 U.S.C. § 1231(a), governs the detention, release, and removal of individuals 'ordered removed.'")

# PETITIONER HAS BEEN LAWFULLY DETAINED

- 8 U.S.C. § 1231(a)(6) Permits ICE To Detain Aliens Subject To Reinstated Orders of Removal Beyond the 90-Day Removal Period

   "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

   This provision applies to individuals with reinstated orders of removal.

   - *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 583 (2022) (applying 1231(a)(6) to individual with a reinstated order of removal)

   - *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021) ("We conclude that § 1231 . . . governs the detention of aliens subject to reinstated orders of removal")

# PETITIONER HAS BEEN LAWFULLY DETAINED

- Petitioner Has Been Detained Less Than Two Months

  - The Supreme Court addressed ICE's authority to detain aliens after their removal orders become final in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

  - The Court held that 8 U.S.C. § 1231(a) authorizes immigration detention for a period reasonably necessary to accomplish the alien's removal from the United States. 533 U.S. at 699-700.

  - The Supreme Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal. *Id.* at 701.

  - Petitioner's detention of less than two months as the Government effectuates her removal is presumptively reasonable.

  - Her detention is consistent with statutory authority and Supreme Court precedent.

# THERE HAS NOT BEEN A DUE PROCESS VIOLATION

- Procedural and Substantive Due Process Violations Both Require Violation of a Liberty or Property Interest

- In evaluating a procedural due process claim, "[w]e must determine (1) whether [plaintiff] possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest." *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir.2002).

- "To establish a substantive due process claim, a plaintiff must show (1) that she was deprived a cognizable liberty or property interest and (2) that the defendants acted in a manner so egregious as to violate constitutional standards" *Zynger v. Dep't of Homeland* Sec., 615 F. Supp. 2d 50, 59 (E.D.N.Y. 2009), *aff'd,* 370 F. App'x 253 (2d Cir. 2010)

# PETITIONER HAS NO LIBERTY INTEREST IN THE ORDER OF SUPERVISION

- The Government has discretion over granting or revoking an order of supervision, and thus Petitioner has no liberty interest in it.

  - There is no constitutionally protected interest if the law permits government officials to grant or deny the benefit in their discretion. *See, e.g., Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion.")

  - In order for a statute or regulation to create a vested liberty interest, it must confer an entitlement to the relief. *Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006).

  - 8 U.S.C. § 1231(h) provides: "Nothing in this section shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person."

# PETITIONER HAS NO LIBERTY INTEREST IN THE ORDER OF SUPERVISION

- It is well-established that an alien has no entitlement, and therefore no protected liberty interest, in discretionary relief from the immigration laws.

  - *Yuen Jin v. Mukasey*, 538 F.3d 143, 156-57 (2d Cir. 2008) (holding that aliens have no "liberty or property interest in asylum that warrants Fifth Amendment protection," as such relief is discretionary)

  - *Rojas-Reyes v. INS*, 235 F.3d 115, 125-26 (2d Cir. 2000) (holding that alien did not have constitutional right to be considered for the discretionary relief of cancellation of removal)

  - *Matias v. Sessions*, 871 F.3d 65, 72 (1st Cir. 2017) (holding that, because BIA's exercise of its sua sponte authority was purely discretionary, there could be no due process violation in the denial of such relief) *Assad v. Ashcroft*, 378 F.3d 471, 475-76 (5th Cir. 2004) (holding that there could be no due process violation from the failure to be considered for discretionary waiver of removability)

  - *Smith v. Ashcroft*, 295 F.3d 425, 429-30 (4th Cir. 2002) ("[T]he discretionary right to suspension of deportation does not give rise to a liberty or property interest protected by the Due Process Clause.")

  - *Oguejiofor v. Attorney General of the United States*, 277 F.3d 1305, 1309 (11th Cir. 2002) ("[A]n alien has no constitutionally protected right to discretionary relief or to be eligible for discretionary relief.");

  - *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000) ("Ashki has no constitutionally-protected liberty interest in obtaining discretionary relief from deportation.")

  - *Appiah v. INS*, 202 F.3d 704, 709 (4th Cir. 2000) ("Because suspension of deportation is discretionary, it does not create a protectible liberty or property interest.").

# The Government Has Discretion To Revoke Petitioner's Order of Supervision

- The applicable regulation gives the Government discretion over revoking Petitioner's order of removal

8 CFR 241.4(*l*)(2)

Determination by the Service. The Executive Associate Commissioner shall have authority, **in the exercise of discretion**, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked **in the exercise of discretion when**, in the opinion of the revoking official:

(i) The purposes of release have been served;

(ii) The alien violates any condition of release;

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

# The Government Has Discretion To Revoke Petitioner's Order of Supervision

- The regulation relied on by Petitioner likewise gives the Government discretion over revoking Petitioner's order of supervision

  8 CFR 241.4(*l*)(1)

  - (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release **may be returned to custody**. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

  - *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion.")

# The Government Has Discretion To Revoke Petitioner's Order of Supervision

- **The Government's authority to issue or revoke an Order of Supervision is discretionary.**

- *See, e.g., Lin v. Borgen*, No. 25-CV-05618 (MMG), 2025 WL 2158874, at *4 (S.D.N.Y. July 30, 2025) (describing ICE's authority to make determinations regarding Orders of Supervision as a "wholly discretionary act").

# The Government Has Complied With Its Regulation Addressing Returning An Alien To Custody

8 CFR 241.4(*l*)(2)

Determination by the Service. The Executive Associate Commissioner shall have authority, <u>**in the exercise of discretion**</u>, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked <u>in the exercise of discretion</u> when, in the opinion of the revoking official:
(i) The purposes of release have been served;
(ii) The alien violates any condition of release;
(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

# Even If 8 CFR 241.4(I)(1) Applied Here, There Has Been No Material Departure From Its Requirements

8 CFR 241.4(*I*)(1)

- (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release <u>may be returned to custody</u>. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

# If The Court Finds a Procedural Violation, the Remedy is to Fix the Process, Not a Release

- *U.S. ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923)  "A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and if sufficient ground for his detention by the government is shown, <u>he is not to be discharged for defects in the original arrest or commitment</u>." (emphasis added).

- *See, e.g.*, *U.S. ex rel. Ling Yee Suey v. Spar*, 149 F.2d 881, 883 (2d Cir. 1945) ("But on a writ of habeas corpus we can determine only whether petitioners can be lawfully detained; and if sufficient ground for their detention is shown, they are 'not to be discharged for defects in the original arrest or commitment.'" (citing *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).

# If The Court Finds a Procedural Violation, the Remedy is to Fix the Process, Not a Release

- The remedy in the event of a procedural violation would be to provide the process that may not have occurred.

- *See, e.g.*, *Rasel v. Barr*, 455 F. Supp. 3d 38, 52 (W.D.N.Y. 2020) (where custody review had procedural errors, ordering that custody review under 8 C.F.R. § 241.4 be provided within 90 days).